## City of Hopkinsville, et al. v. Jarrett, et al.

(Decided January 13, 1914.)

### Appeal from Christian Circuit Court.

1. Dedication—Parks—Use of Property for Library Site—Diversion. —Land devised to a city on the condition that it shall be forever used as a public park cannot be used as a site for a public library.

2. Municipal Corporations—Cities of Fourth Class—Public Library— Power to Donate Site—Section 3480a, Kentucky Statutes—Construction.—Section 3480a, Kentucky Statutes, giving to municipalities of the third, fourth, fifth and sixth classes the power to grant, donate or authorize the use of any land, squares or real estate belonging to such city or town, or dedicated to public use therein, for the purpose of erecting and maintaining a building to be used for a public library and reading room, covers only such land as belongs to such city or town or has been dedicated, by an individual or the public, generally to the public use, or by the public to a particular public use, but does not cover land dedicated by an individual for a specific public use, and accepted by the city in accordance with the terms of the grant or devise, and the city by virtue thereof has no power to donate as a site for a public library land that has been devised to it on condition that it shall be forever used as a public park.

JOHN STILES and FRANK RIVES for appellants.

THOS. P. COOK for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

John C. Latham, a resident and citizen of New York, died testate on May 18, 1910. His will, which was dated June 18, 1909, was duly probated in the proper court in the State of New York, and later a certified copy thereof was probated in and by the county court of Christian County, Kentucky.

Clause 5 of the will is as follows:

"I give, devise and bequeath to the city of Hopkinsville, Ky., a lot of ground, in Hopkinsville, Ky., known

as the "WAREHOUSE lot, bounded by Campbell, Ninth and Railroad streets. This devise is upon condition that said lot shall be used forever as a public park, and that the park be named, "PEACE PARK," the buildings on said lot were destroyed by fire. I give, devise and bequeath to the City of Hopkinsville the sum of Ten Thousand Dollars ($10,000.00) to prepare and beautify this warehouse lot for park purposes."

Shortly after the will was probated the Carnegie Corporation of New York donated to the City of Hopkinsville the sum of $15,000 for the purpose of building, equipping and maintaining a public library in that city. On December 20, 1912, the City of Hopkinsville, by a resolution regularly adopted, granted to the board of directors of the public library the right to build, equip and maintain a library building on "Peace Park." Thereafter the board of directors of the public library contracted with the Forbes Manufacturing Company to construct a library building on a portion of the lot known as "Peace Park."

This action was brought by C. F. Jarrett and others, suing as citizens, taxpayers and park commissioners of the city of Hopkinsville against the defendants, the directors of the Hopkinsville Public Library, the city of Hopkinsville and the Forbes Manufacturing Company, to enjoin them from erecting a library building on "Peace Park." The chancellor granted plaintiffs the relief asked and defendants appeal.

For appellants it is insisted that the use of a small part of Peace Park as a site for a library building is entirely consistent with its use for park purposes, and does not, therefore, amount to a diverson. In this connection it is argued that the purpose of the grantor was to convey property to the city of Hopkinsville to be enjoyed by its inhabitants; that as it would be entirely proper for those frequenting the park to carry with them and read such books as they desired while sitting in the park, it would be also proper to provide a convenient building in the park from which they could obtain good literature, and to which they could repair when the weather was inclement. In support of this position we are cited to the following cases: Spires v. Los Angeles, 150 Cal., 64, 87 Pac., 1026, 11 A. & E. Ann Cases, 464; Hartford v. Maslen, &c., 76 Conn., 599, 57 Atl., 740; Riggs v. Board of Education, 27 Mich., 262. In our opinion, however,

the rule announced in the foregoing cases is not sufficiently broad to cover the case at bar. For instance, in the case of Spires v. Los Angeles, it was held that the erection of a library building on a public park was not inconsistent with the purpose for which the park was dedicated, but in that case the dedication was by the city itself and the land was dedicated as "a public place forever for the enjoyment of the community in general." Under these circumstances the court took the view that the erection of the public library was not only consistent with, but tended to increase the public enjoyment of the park. In Hartford v. Maslen, &c., the city of Hartford owned the fee to certain land. It afterwards dedicated it, with other lands, for purpose of a public park. The city council had the power to lay out, alter or discontinue such park in a manner described in the charter. Before tender of the land to the State for the purpose of a State Capitol, the right of the public to use it as a park was subject to such reasonable restrictions as to the manner of enjoyment as might be imposed by the common council or the board of park commissioners. A part of the land dedicated as a public park was turned over to the State for use as a part of the State Capitol grounds. The court held that as a matter of fact its use by the State in no way interferred with its proper enjoyment by the public as a park, and that practically the only effect of joining the land to the capitol grounds was to place under the control of the general assembly part of the public park which had before been under the management of the city authorities.

In the case of Riggs v. Board of Education, a former council had dedicated certain land for park purposes. A subsequent council authorized the erection of a public library on a part thereof. The original act under which the land was dedicated contemplated the erection of public buildings on the land set apart for park purposes. In addition to this the city council had the power to vacate any of its open spaces or parks at its discretion. It was accordingly held that the use of the land for a public library was not only within the original purpose of the dedication, but within the power of the city under its charter to vacate open spaces for public improvements.

It will be seen from the foregoing cases that the dedication was made by the public. A different construction

is placed upon dedications made by individuals from those made by the public. The former are construed strictly according to the terms of the grant, while in the latter cases a less strict construction is adopted. Spires v. Los Angeles, *supra;* Riverside v. MacLain, 210 Ill., 308; 66 L. R. A., 288, 102 Am. St. Rep., 164. It is likewise well settled that if a grant or devise is made for a specific, limited and definite purpose, the subject of the grant can not be used for another purpose, and a diversion of the subject of the trust from the purposes for which the trust was created may be enjoined. Warren v. Lyons, 22 Iowa, 351; Church v. Portland, 18 Oregon, 73, 6 L. R. A., 259, 22 Pac., 528; Barnum v. Mayor of Baltimore, 62 Md., 275, 50 A. R., 219; Perry Public Library Asso. v. Lobsitz (Okla.), 45 L. R. A., 368, 130 Pac., 919. In the last mentioned case it was held that property dedicated for a public library could not be used for municipal offices, or for commercial club purposes, or for the purpose of holding public conventions, but that such use constituted a diversion which a court of equity would enjoin. In the case of Rowzee v. Pierce, 75 Miss., 846, 40 L. R. A., 402, 65 Am. St. Rep., 625, it was held that land dedicated for public use as an ornamental park exclusively could not be used as a site for a school house. In Board of Education v. Kansas City, 62 Kas., 374, 63 Pac., 600, it was also held that property dedicated for other public purposes, evidently a public park, could not be appropriated by the city council for school purposes. In McIntyre v. El Paso County, 15 Col. App., 78, 61 Pac., 237, it was held that a city had no power to allow land dedicated by a land owner for use as a public park to be used for the erection of a county court house.

While we have not heretofore passed on the question, a similar question was before the Superior Court in the case of Roach's Ex'r. v. City of Hopkinsville, 13 Ky. L. R., 543, where it was held that a bequest to the city for "the establishment and erection of a hydrant or fountain on some of the public streets of the city which shall be free to the public for supplying pure, fresh, cool drinking water for all passers by" did not give the city the right to use the sum bequeathed in digging cisterns or sinking wells at one or more places on the streets of the city.

In the case under consideration the dedication was made by a private individual for a specific public use.

The property was accepted by the city in accordance with the terms of the devise; that is, that it should be forever used as a public park. It is clear, therefore, that it was never intended by the devisor that it should be used for any other purpose. While in a sense it was devised for the enjoyment of the public in general, it is equally manifest that it was to be enjoyed only as a public park, and not in some other way equally enjoyable. It is doubtful if it can be said that one who desires to perpetuate his name by a public gift is actuated by a puerile motive. There is in the human heart the desire to be remembered not only as man of high character, but as a generous and public spirited citizen, willing to contribute to the happiness of his fellow men. It may be that in making the devise in question Mr. Latham was actuated by such a motive. At any rate, he had the right to associate the gift with his own name, and to impose on the gift any condition not unreasonable or contrary to public policy. The use of the land, therefore, as a site for a public library would not only defeat his purpose, but the monument which he intended for himself, even if not lost sight of by its use for another purpose, would at least have to be shared with another. We, therefore, conclude that the use of the land in question for a public library is inconsistent with the purposes and terms of the devise, and amounts to a diversion.

But it is insisted that even if the contemplated use of the land for a library site amounts to a diversion, the diversion is authorized by sub-section 8, section 3480a, Kentucky Statutes, which provides in part as follows:

"They (cities of the third, fourth, fifth and sixth classes) shall also have power, by ordinance or resolution duly passed for such purpose to grant, donate or authorize the use of either in whole or in part, any land square or real estate belonging to such city or town, or dedicated to public use therein, for the purpose of erection and maintaining a building to be used for a public library and reading room as herein authorized."

In this connection it is insisted that the foregoing statute was in effect when the will was written, and that the devise in question must be construed in the light of the power conferred on the council to donate a portion of the public property for the erection of a library thereon. In support of this proposition we are cited to the case of East Chicago Co. v. East Chicago, 171 Ind., 654.

In that case land was conveyed to the city of East Chicago for the purpose of a public park, and on condition that it should revert in case it should be used for other than park purposes. At the time of the conveyance there was a statute in force in the State of Indiana authorizing the common council of any city upon a petition of a majority of the legal voters thereof to sell any public square or public land of said city, and convey the same by deed under the hand of the mayor and the seal of the city, and providing further that any moneys arising from said sale should be deposited in the treasury of said city to be expended in the purchase of any other public square or public landing, and for the improvement of same. It was held that the transfer of the park lot was made to the city with knowledge of the statute, and, therefore, subject to the right of the city to sell the property, and that the sale of the property was valid. We are not disposed, however, to follow the doctrine of the above case. It is not to be presumed that Mr. Latham, a citizen and resident of the State of New York, had knowledge of the charter provision of the city of Hopkinsville, and that this charter provision would be so construed as to defeat the purpose of his devise. On the contrary, it is much more likely that he would have refused to make the devise had he known that the city, notwithstanding its acceptance of the land on the condition that it should be forever used as a public park, had and would exercise the power to divert it to a use not only not contemplated by him, but inconsistent with the terms of the devise and the condition on which it was accepted. The statute in question is broad enough to include property acquired both before and after its passage. It has been held in a number of cases that the Legislature is without authority to confer on a municipality the power to sell or use for an inconsistent purpose land that had been theretofore dedicated by an individual to a specific public use. Warren v. Lyons, *supra;* McIntyre v. El Paso County, *supra.* Since the statute relied on applies to property dedicated both before and after its passage, and there is nothing in the statute making a distinction between the two classes of property, the statute should be given a construction that will be valid in either case. That being true, we conclude that the statute covers only such land as belongs to the city, or has been dedicated, by an individual or the public, generally to the public

use, or by the public to a particular public use, but does not cover land dedicated by an individual for a specific public use, and accepted by the city in accordance with the terms of the grant or devise.

Judgment affirmed.