PETER RIVET, Plaintiff, *v.* PHILIP W. BURDICK, Town Supervisor, and Others, as Members of the Town Board of the Town of Webb, New York, Defendants.

Fourth Department, June 28, 1938.

*John E. Glenn,* for the plaintiff.

*Durant G. Thompson,* for the defendants.

DOWLING, J. At a special election held January 31, 1938, the duly qualified electors of the town of Webb, a town of the second class, located in Herkimer county and in the Adirondack Park, authorized the town board to purchase several parcels of land in the town for a town park and to construct therein public bob runs, bridle paths, ski trails, ski practice slopes, ski tows, toboggan slides and other winter sports facilities, said park and facilities to be used as a public playground. The electors also authorized the town board to issue the bonds of the town to pay for the land and improvements and to levy a tax on all the taxable property of the town to pay the bonds and interest. The property to be acquired is situate near the former village of Old Forge, the Webb School, a branch line of the New York Central Railroad Company, and is quite adaptable to the purposes intended. Peter Rivet, an elector, a resident and taxpayer of the town of Webb, duly qualified, questions the legality of the action on two grounds: (a) The project, when completed, would be neither a public park

nor a public playground within the meaning of subdivision 4 of section 220 of article XIV of the Town Law. (b) If the project comes within the provisions of paragraph (d) of subdivision 1 of section 81 of article VI and subdivision 4 of section 220 of article XIV of the Town Law, then these sections are unconstitutional in that they violate section 10 of article VIII of the Constitution, in so far as bonds may be issued to pay the cost of the undertaking under section 232 of the Town Law, as amended. Mr. Rivet and the town board of the town of Webb submit their controversy to this court upon agreed facts as provided in sections 546–548 of the Civil Practice Act. To the court they submit for determination the following questions:

Question No. 1. " Do the proposed improvements described above, consisting of the construction of public ski trails, ski practice slopes, ski tows, toboggan slides, bob runs, bridle paths and winter sports facilities, constitute public parks or playgrounds with suitable buildings, structures and apparatus within the meaning of Sections 81 and 220 of the Town Law for the payment of the cost of construction of which the Town Board of the Town of Webb is empowered under section 232 of the Town Law, as amended, to issue bonds of the Town of Webb? "

Question No. 2. " If the foregoing question be answered in the affirmative, do Sections 81 and 220 of the Town Law contravene Section 10 of Article VIII of the Constitution of New York, providing that no town shall incur any indebtedness except for a town purpose, insofar as the issuance of bonds under Section 232 of the Town Law, as amended, may authorize bonds therefor? "

" The right of the town to acquire the land for park purposes cannot be questioned." (Campbell v. Town of Hamburg, 156 Misc. 134; Town Law, § 342 [now § 220].) Section 81 of article VI of the Town Law authorizes town boards to submit propositions at a special or biennial town election. " (d) To establish * * * public parks or playgrounds, acquire the necessary lands therefor, and equip the same with suitable buildings, structures and apparatus." Section 220 of article XIV of the Town Law provides: " General town improvements. Upon the adoption * * * of a proposition therefor, at a town election, in a town of the second class, the town board may: * * * (4) Establish * * * public parks or playgrounds, acquire the necessary lands therefor, and equip the same with suitable buildings, structures and apparatus." Section 223 of article XIV of the Town Law provides: " Expense of improvement. The expense of any public improvement made under authority of this article, shall include

the amount of all contracts, the costs of all lands and interests therein necessarily acquired, printing, publishing, interest on loans, legal and engineering services and all other expenses incurred or occasioned by reason of the improvement or project. In no event shall any contract be awarded or obligation issued or incurred in excess of the amount specified in the resolution of the town board or in the proposition adopted at the town election." Section 230 of article XV of the Town Law relates to temporary financing: "Whenever a resolution authorizing a permanent improvement provided for by article twelve or article fourteen, has become effective." Section 232 of article XV of the Town Law provides: "Permanent financing of general improvements. The town board may provide for the payment of the cost of a public improvement or project referred to in article fourteen by any one or by a combination of the following methods, namely: (1) by the use of surplus moneys of the town or (2) by including a sum therefor in the annual tax levy or (3) by temporary loans in the first instance and the subsequent issuance of bonds to pay said loans or (4) by the issuance of bonds in the first instance either all at one time or from time to time. The town board shall raise annually by tax a sum sufficient to pay the interest and the principal of the bonds, and the temporary loans, if not otherwise paid, as the same shall become due; and such tax shall be assessed, levied and collected from all taxable property in the town in the same manner and at the same time as the annual tax for other town charges."

Section 81 of article VI of the Town Law outlines the procedure for submitting a proposition at a special or biennial town election. The duly qualified electors of the town of Webb have authorized the town board of the town of Webb to acquire the necessary land and to construct thereon bob runs, toboggan slides, bridle paths, ski trails and the like and to issue bonds in payment thereof and the town board, awaiting the outcome of this controversy, has taken no action to make the resolutions effective. Section 220 of article XIV of the Town Law indicates quite clearly that once a resolution is adopted at a special or biennial election the town board must take affirmative action to put the resolution into effect. We are informed from the agreed statement of facts that the members of the town board " are about to adopt proceedings authorizing the construction of the improvements described in said propositions * * * ." This is enough to constitute a real controversy which might be the subject of an action and this is all that is required under section 546 of the Civil Practice Act. (*Post* v. *Metropolitan Casualty Ins. Co.*, 227 App. Div. 156; affd., 254 N. Y. 541; *Matter of Hammond* v. *Rice*, 239

App. Div. 539, 541; *Holton* v. *Board of Supervisors, Monroe County*, 245 id. 144, 145; *Kenwell* v. *Lee*, 261 N. Y. 113.)

" A park is a pleasure ground set apart for recreation of the public, to promote its health and enjoyment. (*Perrin* v. *N. Y. Cent. R. R. Co.*, 36 N. Y. 120, 124.) It need not and should not be a mere field or open space. * * * Differences naturally arise as to the meaning of the phrase ' park purposes.' * * * Monuments and buildings of architectural pretension which attract the eye and divert the mind of the visitor; floral and horticultural displays, zoological gardens, playing grounds, and even restaurants and rest houses and many other common incidents of a pleasure ground contribute to the use and enjoyment of the park. The end of all such embellishments and conveniences is substantially the same public good. They facilitate free public means of pleasure, recreation and amusement and thus provide for the welfare of the community. The environment must be suitable and sightly or the pleasure is abated. Art may aid or supplement nature in completing the attractions offered." (*Williams* v. *Gallatin*, 229 N. Y. 248, 253, 254.)

" A park is, in its strict sense, a piece of ground inclosed for purposes of pleasure, exercise, amusement or ornament." (*Perrin* v. *N. Y. Central R. R. Co.*, 36 N. Y. 120, 124.)

" A park may be devoted to any use which tends to promote popular enjoyment and recreation." (*Matter of Central Parkway*, 140 Misc. 727, 729.)

A town may acquire land for the purpose of establishing a park or playground and equip the same and it may maintain a bathing beach in its park. (*Augustine* v. *Town of Brant*, 249 N. Y. 198, 201.)

A city may acquire land outside of its borders and construct and operate thereon an airport. " The purpose to be served is both public and municipal." It may issue bonds to promote the enterprise without violating section 10 of article VIII of the Constitution. (*Hesse* v. *Rath*, 249 N. Y. 436.) We think the defendants may legally acquire the land in question and establish thereon a public park, or a public playground, or a combination of the two, and the town may legally issue its bonds to pay the cost. Skiing has become a recognized sport, like baseball, tennis, horseback riding, bobsledding, tobogganing, skating and other forms of amusement now to be seen in many public parks. The defendants propose to conduct a public park and a public playground where all may enjoy healthful exercise and healthful surroundings. The establishment of such a park and playground will benefit the people of the town of Webb and the public in general.

Having reached these conclusions, the answer to question No. 1 should be " Yes " and the answer to question No. 2 should be " No." These answers entitle the defendants to judgment to the effect that the proposed acquisition by the town of Webb of the lands described in the agreed statement of facts and the proposed conversion of said lands into a public park or a public playground containing public bob runs, bridle paths, ski trails, ski practice slopes, ski tows, toboggan slides and other winter sports facilities, are authorized by section 81 of article VI and section 220 of article XIV of the Town Law and that the acquisition of said lands for public park or public playground purposes and the development thereof as aforesaid would be proper municipal purposes and the town of Webb might lawfully issue and sell its bonds to finance· the contemplated enterprise. Judgment should be entered accordingly, without costs.

All concur. Present — CROSBY, LEWIS, CUNNINGHAM, TAYLOR and DOWLING, JJ.

Submitted controversy determined in favor of defendants, without costs. First question submitted answered " Yes," and the second question answered " No."