# City Of Hazard et al. v. Eversole et al.

June 9, 1950.

Sam M. Ward, Judge

W. E. Faulkner, for appellants.

J. B Eversole and C E Duff, for appellees

STANLEY, COMMISSIONER—Reversing.

The case involves the right and extent of the right of the City of Hazard in a strip of land claimed by it to have been dedicated as a street. The suit was instituted by certain heirs of Josiah H. Combs for themselves and numerous others to enjoin the city, its commissioners, and a highway construction company from trespassing upon the strip and portions of a family burying ground, particularly from making deep excavations and improving the same as a street. The plaintiffs further prayed that the court adjudge the property to belong to all the heirs in fee and for $55,000 in damages. The circuit court adjudged the public to have acquired by prescription the right to use the land but limited the right to walking and riding horseback over it.

High Street runs north and south, one block east of Main Street. The State Highway Commission, through contractors, is engaged in constructing a highway to the east of High street along Town Branch in order to by-pass the business section of the city. The city desires to build a street connecting High Street with the new road, and has started the construction on this strip of land. It is at the end of Fleet Street, which connects Main with High Street. The courthouse square abuts on all three of these streets, Main, Fleet and High. The construction of a street on the strip of land involved would be an extension of Fleet Street through to the new highway. It is twenty feet wide and one hundred and fifty-two feet long, extending from High Street to the top of a ridge. A right of way has been acquired from this point through to the new road. The plaintiffs did not show any invasion of the old cemetery. We adopt the following portions of the chancellor's opinion as a good statement of the facts:

"Josiah H. Combs died in the year 1894, the owner of this strip of land, as well as the major portion of the land which now comprises the city of Hazard. At that time there were no buildings on this ridge but there was a cemetery on top of the ridge, principally north of the

256

end of this 152 feet. All of this property then was un-
enclosed. In later years the estate of Josiah H. Combs
was settled and the land divided, but this particular
strip was not included in any division. Buildings were
afterward constructed on top of this ridge, south or to
the right of this strip. Later a building was constructed
adjoining this strip on the left or to the north. The evi-
dence shows that for forty or fifty years the public has
used this strip as a walkway, for riding over it on horse-
back and on a few occasions a wagon and team has been
driven over it, but this use has been mainly in going to
and from the buildings erected on top of the ridge. It
has never been used as a pass-way from High Street
across the ridge to the Town Branch. A Colored Church
was erected on top of the ridge, to the right or south of
this strip, and the strip has been used by the Congrega-
tion of that Church for twenty years or more. The strip
from High Street to the top of the ridge is very steep,
so steep that it would be hard to drive an automobile or
truck up to the top of the ridge. The ground is rough and
there is nothing resembling a road-way. The city has
never done anything toward appropriating this as a
street until in November, 1949, when it enacted the or-
dinance accepting it as a public way. No improvement
of any kind has ever been placed on it or adjacent to it
by the city. It is contended by the city that the use of
the property by the public over this long period of years
constitutes a dedication. There has not been any overt
act on the part of the heirs of Josiah H. Combs to indi-
cate that they intended to dedicate it as a street. They
have been silent and have permitted the public to use it
in the way and manner it has been used.''

The court's opinion continues:

''The court is of the opinion that the public has
acquired a right to the use of this property in the way
and manner it has been used by the public, as shown by
the evidence, but the court is of the opinion that this
right does not extend to the point of giving the city title
to the property, which would be the result, for the city
is proposing to excavate and remove the soil down to a
point level with High street. This would destroy the
right which the public has acquired by prescription, if
any. The court is of the opinion that because this strip
has been used as an approach to a graveyard where an-
cestors of the plaintiffs are buried does not prevent the

city from acquiring title to the property for the purposes of this extension by condemnation.''

We concur in the opinion that the public, through the municipality, acquired the right by prescription to use this strip of land as one of its public ways, but reach a different conclusion with respect to the extent of that right. Here was a strip of land twenty feet wide left without being allotted to any of the numerous heirs in the partition and distribution of the estate of the owner, who has been dead 56 years. It may have been left in the beginning for access to the old burying ground on top of the ridge. But the cemetery is readily accessible from Broadway and an alley. As stated by the trial court, the terrain of this strip is of such character as to have prohibited use of it by other than pedestrians. Dedication or an intention to dedicate property as a street or road may be presumed or inferred from circumstances, particularly from the use by the public for a long period of time without objection and through acquiescence of the owner.

The exclusion of the strip of land from the division of the property among the heirs manifested a purpose to dedicate it to public use, and the continuous uninterrupted use by the public for so long a time in the only way it could be used without improvement adds to the presumption and also constitutes an acceptance. Thus, there was a common-law dedication, which is effective way of estoppel in pais as distinguished from a statutory dedication or express grant. Riley v. Buchanan, 116 Ky. 625, 76 S. W. 527, 63 L. R. A. 642, 3 Ann. Cas. 788; W. T. Congleton & Co. v. Roberts, 221 Ky. 712, 299 S. W. 579; City of Paducah v. Mallory, 225 Ky. 692, 9 S. W. 2d 1015; City of Paducah v. Katterjohn, 235 Ky. 222, 30 S. W. 2d 207; Gardner v. Hope, 248 Ky. 270, 58 S. W. 2d 353; Fayette County v. Morton, 282 Ky. 481, 138 S. W. 2d 953. A word may be added concerning the acceptance by the municipal government. A street or alley need not be accepted immediately upon its dedication. City of Paducah v. Mallory, supra, 225 Ky. 692, 9 S. W. 2d 1015. This strip was formally accepted by an ordinance before the construction work was begun. However, so far as these plaintiffs are concerned, they are estopped, as we have indicated, to question the right of the public. City of Louisville v. Mutual Life Ins. Co., 147 Ky. 141, 143 S. W. 782; Id., 147 Ky. 738, 145 S. W. 389;

Shurtleff v. City of Pikeville, 309 Ky. 420, 217 S. W. 2d 976.

We come to consider the question of whether the city and the public are limited to using the strip of land by pedestrians and horseback riders, or, with a team of oxen, as the evidence shows was occasionally done in years gone by. Reaching the conclusion that there was a dedication to public use or, what is the same for practical purposes, an estoppel of the heir's of the deceased owner to deny the right of the public, it would seem to follow as of necessity that the character of the use changed with the times and modes of travel. Dedication is not confined to the usages known at the time. It includes the right of the public to use the property in such a way as is convenient and comfortable, according to changed conditions and methods of travel. The ordinary or customary current method is, of course, by automobile. This was the conclusion in Gardner v. Cole, 253 Ky. 164, 69 S. W. 2d 31, where a permissive use as a passway for wagons and horseback riders and livestock was held to permit members of the general public to use the same with heavily loaded trucks. The dedication, it may be added, includes the right to use the property for other public purposes for which other streets are subject according to the determination of the municipality. City of Fulton v. Penny, 273 Ky. 465, 116 S. W. 2d 963; 26 C. J. S. Dedication, Sec. 66; 16 Am. Jur., Dedication, Sec. 61.

Concerning the grading of this strip of land and the removal of a large quantity of the soil, it may be said that though the dedication was in the natural topography, it carried with it the attendant and incidental right of the city to grade and improve the way to make it fit for purposes of travel in the customary manner. City of Owensboro v. Hope, 128 Ky. 524, 108 S. W. 873, 15 L. R. A., N. S., 996, 33 Ky. Law Rep. 375; 25 Am. Jur., Highways, Sec. 53.

Accordingly, the judgment is reversed.